# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

BISIO v THE CITY OF THE VILLAGE OF CLARKSTON

Docket No. 158240.  Argued March 5, 2020 (Calendar No. 4).  Decided July 24, 2020.

Susan Bisio sued the City of the Village of Clarkston in the Oakland Circuit Court for allegedly violating the Freedom of Information Act (FOIA), MCL 15.231 *et seq*.  Bisio filed a FOIA request with Clarkston seeking documents related to city business, including correspondence between Clarkston's city attorney and a consulting firm concerning a development project and vacant property in the city.  Clarkston denied Bisio's request with regard to certain documents in the city attorney's file.  The city attorney, a private attorney who contracted with the city to serve as its city attorney, claimed that the requested documents were not "public records" as defined by MCL 15.232(i).  The city attorney reasoned that he was not a "public body," as defined by MCL 15.232(h), and because the requested documents were never in the possession of the city, which was a public body, the requested documents were not public records subject to a FOIA request.  The trial court, Leo Bowman, J., granted summary disposition in favor of Clarkston, concluding that the documents at issue were not public records because there was no evidence to show that Clarkston had used or retained them in the performance of an official function or that the city attorney had shared the documents with Clarkston to assist the city in making any decision.  The Court of Appeals, BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ., affirmed the trial court's ruling in an unpublished per curiam opinion but reasoned that Bisio's FOIA request was properly denied because the city attorney was merely an agent of Clarkston and the definition of "public body" in MCL 15.232(h) did not encompass an agent of a public body.  The Supreme Court granted Bisio's application for leave to appeal.  504 Mich 966 (2019).

In an opinion by Justice MARKMAN, joined by Justices ZAHRA, BERNSTEIN, CLEMENT, and CAVANAGH, the Supreme Court *held*:

1.  The purpose of FOIA is to facilitate full participation in the democratic process by providing the people of Michigan with full and complete access to information regarding the affairs of government, public officials, and public employees.  Except in cases of specifically delineated exceptions, a person who submits a FOIA request to a public body for a public record is entitled to inspect, copy, or receive copies of the requested public record.  What ultimately determines whether a writing is a public record under FOIA is whether a public body prepared, owned, used, possessed, or retained it in the performance of an official function.  MCL 15.232(h)(*i*) provides that "public body" means a state officer, employee, agency, department,

division, bureau, board, commission, council, authority, or other body in the executive branch of the state government. Thus, while the term "public body" suggests a collective entity, the statutory language provides that a *single officer or individual* may be considered a public body under FOIA. Moreover, MCL 15.232(h) indicates that a *single office* may also be considered a "public body" for purposes of FOIA. MCL 15.232(h)(*i*) expressly excludes the governor and lieutenant governor from the definition of public body, as well as "the executive office of the governor or lieutenant governor" and employees of those offices. Because these two executive offices do not constitute a state officer, employee, agency, department, division, bureau, board, commission, council, or authority under MCL 15.232(h)(*i*) as those terms are commonly understood, it must be that these two executive offices are "other bod[ies]" under MCL 15.232(h)(*i*). Therefore, an "other body" under this provision of the statute must include an "office" within the executive branch of state government, which is consistent with MCL 15.232(h)(*iv*). Under MCL 15.232(h)(*iv*), a public body includes any "other body that is created by state or local authority or is primarily funded by or through state or local authority," excluding "the judiciary, including the office of the county clerk and its employees when acting in the capacity of" circuit court clerk. The exclusion of the office of the county clerk from the statutory definition of public body indicates that the office constitutes an "other body" that would otherwise be included in the definition. Therefore, an "other body" in both MCL 15.232(h)(*i*) and MCL 15.232(h)(*iv*) must include an "office."

2. Clarkston's city charter expressly recognizes several administrative officers, including "the City Attorney." The charter further provides that the named administrative officers occupy "offices" within the city. Because the charter thus creates an office of the city attorney, this office is a public body in that it constitutes an "other body" created by local authority under MCL 15.232(h)(*iv*). It cannot be reasonably disputed that the office of the city attorney retained the documents at issue in the performance of an official function pursuant to MCL 15.232(i). Therefore, the documents were public records for the purposes of FOIA.

Judgment of the Court of Appeals reversed and case remanded.

Chief Justice MCCORMACK, concurring, agreed with the majority that the documents requested by Bisio were public records subject to disclosure under FOIA, but she wrote separately to address the issue the court granted leave to decide: whether common-law agency principles apply to FOIA such that the records created by a public body's agent while representing the public body in government affairs are subject to disclosure. She concluded that common-law agency principles are applicable. Therefore, Clarkston's city attorney was an agent of the city, and as such his written communications with third parties were public records, regardless of whether the documents were ever in the city's possession. Because the city attorney created the requested documents while representing Clarkston in the course of conducting government business, the documents were subject to disclosure under FOIA. Common-law agency principles apply to FOIA because the common law applies to statutory law unless it is affirmatively abrogated by the Legislature. Because there was no evidence that the Legislature intended that the common-law theory of agency not apply to FOIA, she presumed that it is applicable. Further, because a city is an artificial entity that can only act through its agents and employees, if agency principles were not applicable to FOIA, no records from a municipal corporation would be subject to disclosure.

Justice VIVIANO, dissenting, disagreed with the majority's decision to adopt a theory of the case presented in an amicus brief and believed that the dispute in the case concerned whether Clarkston was required to turn over its city attorney's files on the basis of an agency theory. The parties conceded that the city attorney was not, individually, a public body, and moreover, that an individual does not qualify as a public body under MCL 15.232(h)(*iv*). Justice VIVIANO disagreed that Clarkston's city charter created an "office of the city attorney" and instead concluded that the charter established the city attorney as an administrative officer of the city. As used in the charter, an "office" is simply a position of public authority occupied by an officer. Because the city attorney was not a collective entity, but an individual, the city attorney could not be a public body under FOIA. Further, the majority's holding would radically expand the definition of "public body" under FOIA such that it would be interpreted to encompass all officers of local governmental units. Justice VIVIANO would have affirmed the Court of Appeals because it reached the right result for the right reasons on the issue presented.

©2020 State of Michigan

# OPINION

Chief Justice:
 Bridget M. McCormack

Chief Justice Pro Tem:
 David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED July 24, 2020

STATE OF MICHIGAN

SUPREME COURT

SUSAN BISIO,

  Plaintiff-Appellant,

v                                                    No. 158240

THE CITY OF THE VILLAGE OF
CLARKSTON,

  Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case concerns the definition of "public record" set forth in MCL 15.232(i) of the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. This definition provides that "public record," as used within the act, means "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." Here, plaintiff Susan Bisio sent a FOIA request to defendant seeking documents pertaining to city business. Defendant, through its city attorney, denied the

request with respect to certain documents contained in the files of the city attorney, reasoning that the city attorney did not constitute a "public body" for purposes of MCL 15.232(i) and therefore that the requested documents were not "public records" subject to disclosure under FOIA. Both the trial court and the Court of Appeals upheld the denial. For the reasons set forth herein, we conclude that those documents do satisfy the statutory definition of "public records." Because the Court of Appeals concluded to the contrary, we respectfully reverse its judgment and remand to the trial court for further proceedings consistent with this opinion.

## I. FACTS & PROCEEDINGS

In June 2015, plaintiff filed a FOIA request with defendant seeking, in pertinent part, correspondence between its city attorney, Thomas J. Ryan, and a consulting firm concerning a development project and vacant property within the city. Defendant denied the request with respect to documents contained within the city attorney's file, and the city attorney explained his reasoning to plaintiff in an October 2015 letter:

> [MCL 15.232(i)] states: "Public record" means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created.[1] The basis for the denial was, in my opinion as city attorney, [that] I am not a "public body". Thus, the information sought was neither created nor obtained by a public body, i.e. The City of the Village of Clarkston and thus was not a public record. . . . Thus, the very touchstone of a request for a "public record" by a "public body," your information requested was never received or in the possession of the public body, i.e. The City of the Village of Clarkston . . . .

---

[1] The subsections in MCL 15.232 that are relevant to this case were relettered in June 2018, although their language remained virtually unchanged. See 2018 PA 68. For the purposes of this opinion, we refer to the present lettering and language.

In December 2015, plaintiff sued defendant for an alleged FOIA violation with respect to the requested documents in an effort to compel their disclosure. The parties filed competing motions for summary disposition; plaintiff argued that the documents constituted "public records" under MCL 15.232(i), while defendant argued to the contrary.[2] The trial court ultimately granted summary disposition in favor of defendant and denied plaintiff's motion for summary disposition as moot. In addressing this matter, the trial court agreed with plaintiff that "[i]t is sufficient . . . for a document to be considered a 'public record' if a public body's agent (such as a public body's attorney) prepared, owned, used, possessed, or retained documentation in the performance of an official function." The trial court then framed the issue as whether "defendant used the contested records (the actual correspondence) as a basis for its decision or merely used Attorney Ryan's advice or oral report for a decision." The trial court continued:

> Having reviewed the documentary evidence, this Court finds that the contested records are not "public records" because there is no evidence to support that defendant used or retained them in the performance of an official function or that Attorney Ryan shared the contested records (the actual correspondence) to assist defendant in making a decision. Summary disposition pursuant to MCR 2.116(C)(10) is, therefore, appropriate.

Plaintiff appealed and the Court of Appeals unanimously affirmed on somewhat different grounds. *Bisio v City of the Village of Clarkson*, unpublished per curiam opinion of the Court of Appeals, issued July 3, 2018 (Docket No. 335422). The Court observed that under

---

[2] MCL 15.243(1)(g) of FOIA provides that a public body may exempt from disclosure as a public record "[i]nformation or records subject to the attorney-client privilege." Although this exemption was discussed below, we do not address the exemption today. Instead, we address only the threshold question whether the documents at issue constitute "public records" under MCL 15.232(i).

FOIA, only "public records" are subject to disclosure, and it noted that a "public record" is defined as " 'a writing prepared, owned, used, in the possession of, or retained by a *public body* in the performance of an official function, from the time it is created.' " *Id*. at 4, quoting what is now MCL 15.232(i) (emphasis added). The Court reasoned that the statute's definition of "public body," now set forth in MCL 15.232(h), does not encompass an *agent* of a public body. *Bisio*, unpub op at 5. Therefore, the Court concluded that because the city attorney was merely an agent of the defendant public body and not himself a "public body," the documents at issue in his possession were not "public records" properly subject to disclosure. *Id*. at 5-6.

Plaintiff next sought leave to appeal in this Court, which we granted, directing the parties to address the following two issues:

> (1) whether the Court of Appeals erred in holding that the documents sought by the plaintiff were not within the definition of "public record" in § 2(i) of the Freedom of Information Act (FOIA), MCL 15.231 *et seq*.; and (2) whether the defendant city's charter-appointed attorney was an agent of the city such that his correspondence with third parties, which were never shared with the city or in the city's possession, were public records subject to the FOIA, see *Breighner v Michigan High Sch Athletic Ass'n*, 471 Mich 217, 233 nn 6 & 7 (2004); *Hoffman v Bay City School Dist*, 137 Mich App 333 (1984). [*Bisio v City of the Village of Clarkston*, 504 Mich 966 (2019).]

## II. STANDARD OF REVIEW

"This Court reviews de novo the trial court's decision to grant a motion for summary disposition." *Mich Federation of Teachers & Sch Related Personnel v Univ of Mich*, 481 Mich 657, 664; 753 NW2d 28 (2008). "This Court [also] reviews de novo as a question of law issues of statutory interpretation." *State News v Mich State Univ*, 481 Mich 692, 699; 753 NW2d 20 (2008). "We give effect to the Legislature's intent as expressed in the

4

language of the statute by interpreting the words, phrases, and clauses according to their plain meaning." *Id*. at 699-700.

## III. ANALYSIS

"The purpose of FOIA is to provide to the people of Michigan 'full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees,' thereby allowing them to 'fully participate in the democratic process.' " *Amberg v Dearborn*, 497 Mich 28, 30; 859 NW2d 674 (2014), quoting MCL 15.231(2). "As a result, except under certain specifically delineated exceptions, see MCL 15.243, a person who 'provid[es] a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record' is entitled 'to inspect, copy, or receive copies of the requested public record of the public body.' " *Amberg*, 497 Mich at 30, quoting MCL 15.233(1).

MCL 15.232(i) defines "public record" as follows:

> "Public record" means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created. Public record does not include computer software. This act separates public records into the following 2 classes:
>
> (*i*) Those that are exempt from disclosure under [MCL 15.243].
>
> (*ii*) All public records that are not exempt from disclosure under [MCL 15.243] and that are subject to disclosure under this act.[3]

And MCL 15.232(h) defines "public body" as follows:

---

[3] The predecessor to MCL 15.232(i)(*ii*), in effect when this case was originally filed in the trial court, stated as follows: "All public records that are not exempt from disclosure under [MCL 15.243] and which are subject to disclosure under this act." See 1996 PA 553. In all other respects, the definition of "public record" was unchanged by the June 2018 amendments of MCL 15.232. See 2018 PA 68.

5

"Public body" means any of the following:

(*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.

(*ii*) An agency, board, commission, or council in the legislative branch of the state government.

(*iii*) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.

(*iv*) Any other body that is created by state or local authority or is primarily funded by or through state or local authority, except that the judiciary, including the office of the county clerk and its employees when acting in the capacity of clerk to the circuit court, is not included in the definition of public body.[4]

"In short, what ultimately determines whether records . . . are public records within the meaning of FOIA is whether the public body prepared, owned, used, possessed, or retained them in the performance of an official function." *Amberg*, 497 Mich at 32.[5]

---

[4] The predecessor to MCL 15.232(h)(*iv*), in effect when this case was originally filed in the trial court, stated as follows: "The judiciary, including the office of the county clerk and employees thereof when acting in the capacity of clerk to the circuit court, is not included in the definition of public body." See 1996 PA 553. In all other respects, the definition of "public body" was unchanged by the June 2018 amendments of MCL 15.232. See 2018 PA 68.

[5] "The language 'from the time it is created' in the definition of the term 'public record' was initially included in [MCL 15.232(i)] to make clear that FOIA applied to records 'irrespective of the date the documents were prepared,' i.e., to records created before FOIA took effect." *Amberg*, 497 Mich at 31 n 1, quoting OAG, 1979–1980, No. 5500, pp 255, 263–264 (July 23, 1979).

The parties here do not dispute that the documents at issue are "writing[s]" or that the documents were "prepared, owned, used, in the possession of, or retained" by the city attorney under MCL 15.232(i). The crux of the dispute is simply whether the documents may be deemed "prepared, owned, used, in the possession of, or retained" by a "*public body*" for the purposes of MCL 15.232(i).[6] To resolve this dispute, we must consider the definition of "public body" set forth in MCL 15.232(h).

In doing so, we initially note that MCL 15.232(h) defines the term "public body" in a somewhat unorthodox fashion. As we recognized in *Herald Co v Bay City*, 463 Mich 111; 614 NW2d 873 (2000), "the ordinary definition of 'body' " includes definitions such as " 'a group of individuals regarded as an entity' and 'a number of persons, concepts, or things regarded collectively; a group.' " *Id*. at 129-130 & n 10, quoting *The American Heritage Dictionary of the English Language* (New College ed). That is, the term "public body" suggests a "collective entity." See *id*. at 129. However, MCL 15.232(h) provides that a single officer or individual may, in particular circumstances, be considered a "public body" for purposes of FOIA. See MCL 15.232(h)(*i*) (providing that "public body" includes "[a] state officer [or] employee").

---

[6] Defendant does not concede that the documents in dispute were "prepared, owned, used, in the possession of, or retained . . . *in the performance of an official function*" for the purposes of MCL 15.232(i). However, we conclude that the "in the performance of an official function" requirement was satisfied here because the office of the city attorney "retained" the documents in furtherance of the municipal regulatory interests of defendant. *Id*.

7

But more importantly, MCL 15.232(h) indicates that a single *office* may also be considered a "public body" for purposes of FOIA.[7] MCL 15.232(h)(*i*) provides that "public body" means a "state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government . . . ," while MCL 15.232(h)(*i*) further provides that, notwithstanding these terms, "public body" does not include "the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof." It is thus noteworthy that MCL 15.232(h)(*i*) separately excludes "the governor [and] lieutenant governor," as

---

[7] We recognize that this argument was offered only by amici-- specifically, the Michigan Press Association and other related press organizations-- on behalf of plaintiff. Nonetheless, we exercise our judgment to take cognizance of this argument because the instant case implicates a pure question of statutory interpretation and may correctly be resolved, in our judgment, on the basis of this argument. See, for example, *Council of the Village of Allen Park v Allen Park Village Clerk*, 309 Mich 361, 363; 15 NW2d 670 (1944) (affirming an earlier case that was decided on the basis of an argument "not argued by counsel representing the parties," but instead "argued in the brief *amicus curiae*"). See also *Mapp v Ohio*, 367 US 643, 646 n 3; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) (overruling *Wolf v Colorado*, 338 US 25; 69 S Ct 1359; 93 L Ed 1782 (1949), in a case in which, "[a]lthough appellant chose to urge what may have appeared to be the surer ground for favorable disposition and did not insist that *Wolf* be overruled, the *amicus curiae*, who was also permitted to participate in the oral argument, *did* urge the Court to overrule *Wolf*") (emphasis added). Furthermore, we note that plaintiff has consistently argued throughout this case that the documents at issue constitute "public records" because, among other reasons, the city attorney holds an "office" within defendant and therefore the documents were retained "in the performance of an official function." See MCL 15.232(i). In this regard, our decision to address the argument offered by the amici is similar to the circumstances in *Teague v Lane*, 489 US 288, 300; 109 S Ct 1060; 103 L Ed 2d 334 (1989), in which the United States Supreme Court explained that "[t]he question of retroactivity with regard to petitioner's fair cross section claim has been raised only in an *amicus* brief. . . . Nevertheless, that question is not foreign to the parties, who have addressed retroactivity with respect to petitioner's *Batson* claim." And *Teague* favorably cited *Mapp* as another instance of the Court reaching a decision "even although such a course of action was urged only by *amicus curiae*." *Id*.

8

well as "the executive office of the governor [and] lieutenant governor." By expressly distinguishing between the individual state officers-- the governor and the lieutenant governor-- and the executive offices of those officers, the Legislature, we believe, has communicated that those individual officers are, for purposes of FOIA, separate and distinct entities from their respective "offices."

Furthermore, because the Legislature apparently believed that the governor and lieutenant governor should not be included within the definition of "public body," it expressly provided that those two officers were to be excluded from the definition. MCL 15.232(h)(*i*) provides that "public body" includes "[a] state officer," and obviously, the governor and lieutenant governor are both state officers. Therefore, if the Legislature had not expressly excluded the governor and the lieutenant governor from the definition of "public body," these two officers would certainly have been included within the definition.

Yet the reason for expressly providing that the definition of "public body" does not include "the executive office of the governor or lieutenant governor" is less obvious or apparent. Those two executive offices do not seem to constitute a "state officer," "employee," "agency," "department," "division," "bureau," "board," "commission," "council," or "authority." MCL 15.232(h)(*i*).[8] Therefore, it must be that "the executive office of the governor or lieutenant governor" is presumptively an "other body" under MCL 15.232(h)(*i*). That is, if the Legislature had not expressly provided that the respective executive *offices* of the governor and lieutenant governor are excluded from the definition

---

[8] *Webster's New World Dictionary* (1974) defines "office," in relevant part, as "a position of authority or trust, esp. in a government, business, institution, etc. [the *office* of president]." None of the specifically listed individuals or entities in MCL 15.232(h)(*i*) satisfies this definition.

9

of "public body," then they would presumably have been included within the definition because they are necessarily and logically "other bodies." A contrary interpretation of MCL 15.232(h)(*i*)-- that the respective executive offices of the governor and lieutenant are not a "state officer, employee, agency, department, division, bureau, board, commission, council, authority, or *other body* in the executive branch of the state government"-- would render the exclusory language pertaining to those offices surplusage because it would simply be unnecessary to exclude from coverage those offices that would not otherwise be included within the definition of "public body." "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Thus, under MCL 15.232(h)(*i*), an "other body" must include an "office" within the executive branch of state government.

Our understanding of "other body" in MCL 15.232(h)(*i*) as including an "office" is consistent with MCL 15.232(h)(*iv*). Under MCL 15.232(h)(*iv*), "public body" signifies "[*a*]*ny other body* that is created by state or local authority or is primarily funded by or through state or local authority," but "the judiciary, including the office of the county clerk and its employees when acting in the capacity of clerk to the circuit court, is not included in the definition of public body." (Emphasis added.) As with the express exclusion of the executive offices of the governor and lieutenant governor within MCL 15.232(h)(*i*), the express exclusion of "the office of the county clerk . . . when acting in the capacity of clerk to the circuit court" in MCL 15.232(h)(*iv*) indicates that the office of the county clerk would be included within the definition of "public body" absent that exclusion. And because MCL 15.232(h)(*iv*) refers only to "[a]ny other body that is created by state or local authority

10

or is primarily funded by or through state or local authority," it must be that the office of the county clerk constitutes such an "other body." Put simply, MCL 15.232(h)(*iv*), as with MCL 15.232(h)(*i*), indicates that an "other body" in each provision includes an "office."

With this understanding of MCL 15.232(h) in mind, we then consider the relationship between defendant and its city attorney. Chapter 5 of defendant's City Charter expressly recognizes the following administrative officers:

> The administrative officers of the City of the Village of Clarkston shall be the City Manager, the clerk, the Treasurer, the City Attorney, the Assessor, and the Financial Officer. [City of the Village of Clarkston Charter (the City Charter), § 5.1(a).]

Section 5.6(a) of the City Charter then specifically identifies the duties of the city attorney:

> (1) Advise the Council on all matters of law and changes or developments therein, affecting the City;
>
> (2) Act as legal advisor and be responsible to the Council[;]
>
> (3) Advise the City Manager concerning legal problems affecting the city administration and any officer or department head of the City in matters relating to official duties when so requested in writing, and file with the Clerk a copy of all written opinions;
>
> (4) Prosecute ordinance violations and represent the City in cases before the Courts and other tribunals[.]

And §§ 5.1(d) and (h) of the City Charter provide that the administrative officers identified in the City Charter, including the city attorney, occupy "offices" within the institutional defendant:

> (d) In making appointments of administrative officers, the appointing authority shall consider only the qualifications of the appointee and that person's ability to discharge the duties of *the office* to which he/she is appointed.

\* \* \*

11

(h) In the event of a vacancy in *an administrative office* the Council shall appoint a replacement within one hundred twenty (120) days or may appoint an acting officer during the period of a vacancy in *the office*. [Emphasis added.]

This is consistent with the common understanding that an "officer" generally occupies an "office." Compare *Webster's New World Dictionary* (1974) (defining "officer," in relevant part, as "anyone elected or appointed to an office or position of authority in a government, business, institution, society, etc.") with *Hallgren v Campbell*, 82 Mich 255, 258-259; 46 NW 381 (1890) ("A person actually obtaining office with the legal *indicia* of title is a legal officer until ousted.") (quotation marks and citations omitted).

Accordingly, we conclude that the City Charter creates the "office of the city attorney."[9] Such office is therefore a "public body" because the office constitutes an "other

---

[9] In *People v Freedland*, 308 Mich 449; 14 NW2d 62 (1944), this Court identified five "indispensable" elements for a "public office of a civil nature":

> (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional. [*Id*. at 457-458, quoting *State ex rel Barney v Hawkins*, 79 Mont 506, 528-529; 257 P 411 (1927).]

Although *Freedland* concerned the common-law offense of misconduct in office and is not directly controlling in this case, the office of the city attorney comports with *Freedland*'s standards for a "public office of a civil nature." Briefly stated, the office of the city attorney is (1) created by a municipality; (2) possesses a portion of the sovereign power of

body that is created by . . . local authority" under MCL 15.232(h)(*iv*).[10] Furthermore, it

cannot reasonably be disputed that the office, at a minimum, "retained" the documents at

government; (3) retains powers and duties defined by the municipality; (4) exercises duties under the general control of the City Council; and (5) constitutes a permanent position.

[10] Concerning the dissent, we respectfully disagree with its conclusion that the office of the city attorney does not constitute a "public body" under MCL 15.232(h)(*iv*) and offer the following in response. <u>First</u>, the dissent states that "[t]he statutory context . . . makes it clear that, as it pertains to local governmental units, an individual does not qualify as an other 'body' under Subdivision (*iv*)." But we do not conclude that the city attorney, individually, is himself a "public body" under MCL 15.232(h)(*iv*). Rather, we conclude that the entity, the "office of the city attorney," constitutes the pertinent "public body" under MCL 15.232(h)(*iv*). <u>Second</u>, the dissent states that " 'body' [as used in MCL 15.232(h)(*i*) and (h)(*iv*)] could reasonably be interpreted to include a government office that is, like the other governmental units on the list, a collective and distinct entity." Yet the dissent also acknowledges that it "could not locate a definition describing an 'office' as a collective and distinct entity." And furthermore, we do not agree that an "office"-- or any of the other governmental entities specifically listed in MCL 15.232(h)-- is necessarily limited to "collective and distinct" entities. For instance, MCL 15.232(h)(*iii*) provides that a municipal "department" is a "public body." And while it is true that a department is ordinarily a "collective and distinct" entity, it may also be the case that in a smaller municipality, a relatively minor department may consist of a single individual that nevertheless constitutes a "collective" entity. In such a case, we discern no principled reason why that "department" would be any less of a "public body" under MCL 15.232(h)(*iii*) than a "department" consisting of multiple persons. <u>Third</u>, the dissent asserts that "[t]he majority's holding today portends a radical expansion of the definition of 'public body' under FOIA such that it will now encompass all local officers (not just city attorneys)." To the extent the dissent is concerned with the practical implications of our decision, we again disagree that it will effect any radical change in the operation of FOIA. Consider, for example, how FOIA applies at present to the office of the city mayor. MCL 15.232(i) defines a "public record" obtainable under FOIA as "a writing prepared, owned, used, in the possession of, or retained by a public body in the *performance of an official function*, from the time it is created." (Emphasis added.) That is, virtually all records "prepared, owned, used, in the possession of, or retained" by the office of the city mayor "in the performance of an official function" would *also* consist of records fairly characterized as "prepared, owned, used, in the possession of, or retained" by the city itself "in the performance of an official function." And a "city" indisputably constitutes a "public body" under MCL 15.232(h)(*iii*). We therefore struggle to conceive of an example or illustration of a "public record" subject to disclosure under FOIA in which the pertinent

13

issue. MCL 15.232(i).[11] Consequently, we conclude that the documents at issue are "public records" because they are comprised of "writing[s] prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time [they were] created."[12] *Id*.

"public body" is the "office of the city mayor" but is not also understood to be the city itself. Whether the interpretation of FOIA yielded by this opinion is "broad" or "narrow," or "too broad" or "too narrow," from the perspective of the dissent, it is, in our judgment, fully compatible with the law enacted by the Legislature. In the words of this Court, "FOIA provides Michigan citizens with broad rights to obtain public records, limited only by the coverage of the statute and its exemptions." *Kent Co Deputy Sheriff's Ass'n v Kent Co Sheriff*, 463 Mich 353, 362; 616 NW2d 677 (2000) (citations omitted). We respectfully believe this opinion to be faithful to the decisive terms of FOIA, and we conclude that the records in question here are "public records" retained by a "public body."

[11] "Retain" is defined, in relevant part, as "to hold or keep in possession." *Webster's New World Dictionary* (1974).

[12] We acknowledge that plaintiff sent the FOIA request here to defendant itself, not to the office of the city attorney, as the pertinent "public body" under MCL 15.232(h) and (i). However, that plaintiff's argument accordingly focused on MCL 15.232(h)(*iii*) rather than MCL 15.232(h)(*iv*) is not determinative because "this Court may review an unpreserved issue if it is one of law and the facts necessary for resolution of the issue have been presented." *McNeil v Charlevoix Co*, 484 Mich 69, 81 n 8; 772 NW2d 18 (2009). See also *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002) ("[T]his Court may overlook preservation requirements where failure to consider the issue would result in manifest injustice, if consideration of the issue is necessary to a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented.") (citations omitted). Moreover, "[w]e allow an issue to be raised for the first time on appeal if persuaded that its consideration 'is necessary to a proper determination of a case.' " *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 239 n 5; 615 NW2d 241 (2000), quoting *Prudential Ins Co v Cusick*, 369 Mich 269, 290; 120 NW2d 1 (1963).

We note that FOIA contemplates that a "public body" may exist within a "public body." See, e.g., MCL 15.240(7):

> If the court determines in an action commenced under this section that the public body has arbitrarily and capriciously violated this act by refusal or

## IV. CONCLUSION

Under MCL 15.232(i) of FOIA, a "public record" is "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." We reiterate that such "public records" must be "prepared, owned, used, in the possession of, or retained by a *public body*" and not by a private individual or entity. In the instant case, the office of the city attorney constitutes such a "public body" because it is an "other body that is created by state or local authority" pursuant to MCL 15.232(h)(*iv*). Furthermore, the documents at issue are "writing[s] . . . retained" by that public body and "in the performance of an official function" under MCL 15.232(i), and they are therefore "public records" for the purposes of FOIA. The lower courts erred by ruling otherwise. Accordingly, we reverse the Court of Appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

---

delay in disclosing or providing copies of a public record, the court shall order the public body to pay a civil fine of $1,000.00, which shall be deposited into the general fund of the state treasury. The court shall award, in addition to any actual or compensatory damages, punitive damages in the amount of $1,000.00 to the person seeking the right to inspect or receive a copy of a public record. The damages shall not be assessed against an individual, but shall be assessed against *the next succeeding public body* that is not an individual and that kept or maintained the public record as part of its public function. [Emphasis added.]

STATE OF MICHIGAN

SUPREME COURT

SUSAN BISIO,

      Plaintiff-Appellant,

v                                     No. 158240

THE CITY OF THE VILLAGE OF
CLARKSTON,

      Defendant-Appellee.

_____

MCCORMACK, C.J. (*concurring*).

I concur with the majority because I agree that the requested records are "public records" subject to disclosure under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. But this Court specifically granted leave to decide "whether the defendant city's charter-appointed attorney was an agent of the city such that his correspondence with third parties, which were never shared with the city or in the city's possession, were public records subject to the FOIA." *Bisio v City of the Village of Clarkston*, 504 Mich 966 (2019). I believe the answer is yes and would decide that way, as this issue was thoroughly litigated in the lower courts and is a matter of jurisprudential significance. In my view, the Legislature did not abrogate the common law of agency when it enacted the FOIA. Therefore, common-law agency principles apply to the FOIA so that "the agent stands in the shoes of the principal." *In re Capuzzi Estate*, 470 Mich 399, 402; 684 NW2d 677 (2004). I would hold that because the city attorney created the requested records while

representing the City of the Village of Clarkston (the City) in conducting government business, they are subject to disclosure.

The question is not *who* is a public body, but *what* is a public record? Under the FOIA, a public record is "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." MCL 15.232(i). Thus, if the requested records are writings prepared, owned, used, in the possession of, or retained by the City in the performance of an official function, they are subject to disclosure.[1]

Only one aspect of this definition is seriously in dispute here. The plaintiff submitted her FOIA request to the City, a public body. MCL 15.232(h)(*iii*). The records are "writing[s]" because they are written communications between the city attorney and third parties. MCL 15.232(*l*) ("writing" includes "every other means of recording"). The city attorney created the records "in the performance of an official function," MCL 15.232(i), because they involved his communications on behalf of the City about the application and enforcement of local zoning, environmental, and historical ordinances. The city attorney is an agent of the City. *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 557; 581 NW2d 707 (1998) (an agency relationship exists when " 'one person acts for or represents another by his authority' ") (citation omitted). Thus, to resolve this case, the Court need only answer one question: do common-

---

[1] Unless public records are exempt under MCL 15.243, they must be disclosed. See MCL 15.232(i)(*i*) and (*ii*); *Herald Co v Bay City*, 463 Mich 111, 119 n 6; 614 NW2d 873 (2000) ("[The FOIA] requires the public body to disclose records unless they are exempt . . . ."). The City has not, even in the alternative, argued in this Court that the records fall within an exemption.

law principles of agency apply to the FOIA so that the records created by a public body's agent while representing the public body in government affairs are subject to disclosure?

I would hold that they do. The common law applies unless it is affirmatively abrogated by our Constitution, the Legislature, or this Court. Const 1963, art 3, § 7; *People v Woolfolk*, 497 Mich 23, 25; 857 NW2d 524 (2014). We presume that the Legislature is aware of the common law when it acts. *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006). Although the Legislature can amend or repeal the common law by statute, it "should speak in no uncertain terms" when it does. *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006). This Court will not lightly presume that the Legislature has abrogated the common law. *Velez v Tuma*, 492 Mich 1, 11; 821 NW2d 432 (2012).

Whether the Legislature has abrogated the common law is a question of legislative intent. *Wold Architects*, 474 Mich at 233. And there is no evidence that the Legislature intended to amend the common law of agency as it applies to the FOIA; there is no reference in the FOIA's text to suggest that agency principles do not apply, let alone language to make that clear. We presume that the Legislature is aware of the common-law rule that an agent stands in the shoes of the principal so that the acts of the agent (here, the city attorney) are attributed to the principal (here, the City). *In re Estate of Capuzzi*, 470 Mich at 402. If the Legislature had intended to shield records prepared or retained by a

3

public body's agent in the performance of an official function, it would have said so. It hasn't; I would presume that common-law agency principles apply.[2]

Moreover, applying common-law agency principles is the only way that the FOIA works. The plaintiff submitted her FOIA request to the City, an artificial entity that can only act through others. That corporations act through agents is well settled. See *Fox v Spring Lake Iron Co*, 89 Mich 387, 399; 50 NW 872 (1891). If agency principles did not

---

[2] Justice VIVIANO believes that this issue has already been resolved by *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217; 683 NW2d 639 (2004). I respectfully disagree. The question in *Breighner* was whether the Michigan High School Athletic Association (MHSAA) was a "public body" under the FOIA. *Id*. at 219 ("Public body" was defined at MCL 15.232(d) when *Breighner* was decided; the definition was moved to MCL 15.232(h) with the enactment of 2018 PA 68. I refer to the current citation when discussing *Breighner* in this opinion). The plaintiffs in that case submitted their FOIA request directly to the MHSAA. *Id*. at 222. The trial court held that the MHSAA was "primarily funded by or through state or local authority" and thus was subject to the FOIA as a public body under MCL 15.232(h)(*iv*). *Id*. at 219. This Court disagreed. *Id*. at 225-231.

Alternatively, the plaintiffs argued, *id*. at 231-232, that the MHSAA was a public body under MCL 15.232(h)(*iii*): "A county, city, township, village, intercounty, intercity, or regional governing body, council, *school district*, special district, or municipal corporation, or a board, department, commission, council, *or agency thereof*." (Emphasis added.) This Court rejected that argument, reasoning that "there is a fundamental difference between the terms 'agent' and 'agency' as the latter term is used in the statute." *Breighner*, 471 Mich at 232. Although this definition includes an "agency," the Court explained, "In this specific context, the word 'agency' clearly refers to a *unit or division of government* and not to the *relationship* between a principal and an agent." *Id*. The Court concluded that the Legislature did not intend that any "agent" of the listed governmental entities qualify as a public body under MCL 15.232(h)(*iii*). *Id*. at 232-233.

Common-law abrogation was not before the *Breighner* Court. And since the plaintiffs submitted their FOIA request directly to the MHSAA, which is not a public body, the *Breighner* Court did not have the opportunity to consider whether an *agent* of a public body could create public records. Here, the plaintiff's FOIA request was submitted to the City—the public body—not to the city attorney. Thus, *Breighner*'s analysis is neither helpful nor controlling.

4

apply, how could citizens obtain public records from a municipal corporation? The FOIA's definition of a "public body" for local governmental units does not include employees. See MCL 15.232(h)(*iii*). Yet a city can *only* act through its agents and employees. Thus, if agency principles did not apply to the FOIA, no records from a municipal corporation would be subject to disclosure; it can't prepare, use, or retain records on its own.

Refusing to apply agency principles to the FOIA would frustrate its stated purpose "that all persons . . . are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process." MCL 15.231(2). It would allow local governments to contract out official government work to private attorneys, shield their records from disclosure, and keep the affairs of government secret. One of the City's council members understood this well, as shown by her remarks at a city council meeting after the Court of Appeals' ruling issued:

> What did we win? . . . We get to keep some emails secret that apparently no one in the city is aware of the contents. We get to keep information away from the residents and taxpayers of the city, who pay for the city to function . . . . We can hide things with our attorney? We will forever be known as the city who fought FOIA and won. Not a good reputation. [Custodio, *Council Member Concerned with FOIA-Lawsuit Ruling*, Clarkston News (July 19, 2018), available at <https://clarkstonnews.com/council-member-concerned-foia-lawsuit-ruling/> (accessed July 16, 2020)] [https://perma.cc/R4SH-6MDT].

I would decide this important issue today. The FOIA is "a broadly written statute designed to open the closed files of government." *Kent Co Deputy Sheriff's Ass'n v Kent Co Sheriff*, 463 Mich 353, 359; 616 NW2d 677 (2000). Consistent with this aim and with

5

our common-law abrogation jurisprudence, I would reverse the Court of Appeals and apply common-law agency principles to hold that the city attorney's records are "public records" subject to disclosure.

Bridget M. McCormack

# STATE OF MICHIGAN

## SUPREME COURT

SUSAN BISIO,

     Plaintiff-Appellant,

v                                         No. 158240

THE CITY OF THE VILLAGE OF
CLARKSTON,

     Defendant-Appellee.

_____

VIVIANO, J. (*dissenting*).

This vigorously litigated FOIA action has never been about whether a fictional entity the majority calls "the office of the city attorney" is a "public body" under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* Instead, it has been about whether the City of the Village of Clarkston (the city) must turn over nonprivileged portions of its city attorney's files on the basis of an agency theory. Remarkably, the majority declines even to address the agency theory and instead adopts an amicus argument that was injected into this case at the eleventh hour, without input from the parties or scrutiny from the lower courts. Because I believe that the amicus theory is utterly without merit and will have serious ramifications beyond this case, I respectfully dissent.

## I. THE CASE PRESENTED

The question presented by plaintiff is relatively simple: are the nonprivileged portions of the city attorney's files involving his conduct of official city business "public records" subject to FOIA even though he kept them in a separate off-premises file and did

not forward copies of the records to the city offices or other city officials? From the start, this case has centered on plaintiff's argument that she is entitled to the records because the city attorney is an agent of the defendant city. Accordingly, she contended the documents are "public records" because they are "in the possession" of the city and because the city attorney, as an agent of the city, "used" them to conduct city business and "retained" them. The trial court held that, although agency principles were applicable, there was no evidence the city used or retained the records in performing an official function and therefore they were not "public records." The Court of Appeals unanimously affirmed on the alternate basis that plaintiff's agency theory was "unsupported by the plain language of the relevant statutes, by Michigan caselaw, and by the foreign caselaw relied upon by plaintiff."[1]

---

[1] Because Chief Justice MCCORMACK has indicated in her concurrence that she would reverse the Court of Appeals on this issue, I will briefly explain why I agree with the Court of Appeals that plaintiff's agency theory is without merit. First, we rejected this theory in *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217; 683 NW2d 639 (2004), in which we held that FOIA does not extend to agents of public bodies. In *Breighner*, the plaintiffs argued that "the [Michigan High School Athletic Association, Inc. (MHSAA)] acts as an 'agent' for its member schools and that it is therefore a public body as defined by [MCL 15.232(h)(*iii*)]." *Id*. at 231 (while the term "public body" was formerly defined in MCL 15.232(d), the definition was moved to MCL 15.232(h) with the enactment of 2018 PA 68, and I have substituted the current citation into quotations in this opinion for ease of reference when appropriate). We rejected the *Breighner* plaintiffs' argument, explaining as follows:

> Although the noun "agency" may be used to describe a business or legal relationship between parties, it is wholly evident from the context of § 232[(h)(*iii*)] that this is not the sense in which that term is used. Section 232[(h)(*iii*)] designates several distinct governmental units as public bodies, and proceeds to include in this definition any "agency" of such a governmental unit. In this specific context, the word "agency" clearly refers to a *unit or division of government* and not to the *relationship* between a principal and an agent. Had the Legislature intended any "agent" of the enumerated governmental entities to qualify under § 232[(h)(*iii*)], it would

2

## II. THE CASE THE MAJORITY DECIDES

Inexplicably, the majority opinion fails even to mention the agency issue at the heart of this case. Instead, the majority opinion reaches for an argument more to its liking, i.e., the notion that "a single *office* may also be considered a 'public body' for purposes of FOIA." The majority traces this argument to the amicus brief filed by the Michigan Press Association (MPA) on behalf of itself and a number of other news organizations.[2] And it

> have used that term rather than "agency." [*Id*. at 232-233 (emphasis in original).]

Indeed, we went so far in a footnote as to declare that "it would defy logic (as well as the plain language of [MCL 15.232(h)(*iii*)] to conclude that the Legislature intended that any person or entity qualifying as an 'agent' of one of the enumerated governmental bodies would be considered a 'public body' for purposes of the FOIA." *Id*. at 233 n 6. *Breighner* applies with full force here and precludes us from finding that an agent of one of the governmental agencies enumerated in MCL 15.232(h)(*iii*) is a "public body." Unlike Chief Justice MCCORMACK, I do not see how we can reach a different conclusion about the meaning of "public body" as that term is used in the very next subsection, which defines "public record." See MCL 15.232(i) (" 'Public record' means a writing prepared, owned, used, in the possession of, or retained by a *public body* in the performance of an official function, from the time it is created.") (emphasis added). It would be passing strange to conclude that agency principles were not imported into the definition of "public body," as *Breighner* in essence held, but that those principles should inform the meaning of that term as used in the very next subsection.

*Breighner* also rejected the plaintiff's argument that the MHSAA was a public body under MCL 15.232(h)(*iv*), holding that it was not " 'created' by any governmental authority." *Id*. at 231. Here, I would conclude that plaintiff's agency theory also fails under MCL 15.232(h)(*iv*) but for a different reason. As discussed below, to qualify as an "other body that is created by . . . local authority," whether as an agent of the city or otherwise, the city attorney must be a collective entity. See MCL 15.232(h)(*iv*). See also *Herald Co v Bay City*, 463 Mich 111, 129; 614 NW2d 873 (2000) (noting that "[public body] connotes a collective entity"). No one seriously contends that is the case here.

[2] In addition to the MPA, the MPA's amicus brief was filed on behalf of the Michigan Association of Broadcasters; the Reporters Committee for Freedom of the Press; the Detroit Chapter of the Society of Professional Journalists; The New York Times Company; The Detroit News; The Detroit Free Press; the E.W. Scripps Company; New World

is true that the basic outline of this argument was inserted as an alternative theory at the very end of the MPA's amicus brief. The problem is that until the MPA filed its brief, and even afterward, no one thought this case was about whether a fictional entity known as "the office of the city attorney" was a "public body" under FOIA. The issue was not addressed in any party's briefing, and it was not discussed at oral argument.[3]

Although we value input from amici and sometimes adopt assertions they make, deciding a case by adopting an argument that neither party has made or responded to and none of the lower courts has addressed is quite a departure from the principle of party presentation.[4] But that does not stop the majority, or even slow it down. Instead, finding the parties' framing inconvenient, the majority swallows the MPA's theory whole—even though, as discussed below, it has serious interpretive gaps and will have serious consequences far beyond this case.

---

Communications of Detroit, Inc., on behalf of its television station WJBK—FOX 2 Detroit; Nexstar Media Group, Inc.; Zillow Group, Inc.; the Better Business Bureau of Eastern Michigan; Meredith Corporation; and the Michigan Coalition on Open Government.

[3] Nothing in the record or procedural history supports the majority's assertion that "plaintiff has consistently argued throughout this case that the documents at issue constitute 'public records,' because, among other reasons, the city attorney holds an 'office' within defendant . . . ."

[4] See *United States v Sineneng-Smith*, 590 US ___, ___; 140 S Ct 1575, 1579; ___ L Ed 2d ___ (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in *Greenlaw v. United States*, 554 U.S. 237 [; 128 S Ct 2559; 171 L Ed 2d 399] (2008), 'in both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' *Id.*, at 243.").

A.  INTERPRETIVE ANALYSIS

FOIA defines "public record" in pertinent part to mean "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created."  MCL 15.232(i).  The act defines a "public body" as "any of the following":

> (*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.
>
> (*ii*) An agency, board, commission, or council in the legislative branch of the state government.
>
> (*iii*) A county, city, township, village, intercountry, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.
>
> (*iv*) Any other body that is created by state or local authority or is primarily funded by or through state or local authority, except that the judiciary, including the office of the county clerk and its employees when acting in the capacity of clerk to the circuit court, is not included in the definition of public body.  [MCL 15.232(h).]

All parties concede, and in its unanimous opinion the Court of Appeals held, that the city attorney is not himself a public body.[5]  This widespread agreement is not surprising

---

[5] Defendant has argued throughout this case that the city attorney is not himself a "public body" under FOIA, and plaintiff has repeatedly and emphatically conceded the point and indeed even argued it herself for strategic advantage.  See *Bisio v The City of The Village of Clarkston*, unpublished per curiam opinion of the Court of Appeals, issued July 3, 2018 (Docket No. 335422), p 6 ("Plaintiff argues that the *Breighner* Court's holding is irrelevant to the case at bar because she has never claimed that the city attorney was a public body.").  Plaintiff also asserted at oral argument: "[W]e are not claiming that the city attorney is a public body.  Obviously, he's not.  Because as you point out, the definition doesn't include

5

because it accords with the ordinary meaning of "body" as used in the statute. See

*Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n (On Remand)*, 317

Mich App 1, 13; 894 NW2d 758 (2016) (interpreting "body" in this context "as '[a]n

artificial person created by a legal authority. See [corporation],' and '[a]n aggregate of

individuals or groups.' *Black's Law Dictionary* (10th ed).").  See also *Herald Co*, 463

Mich at 129 (interpreting "public body" under the Open Meetings Act, MCL 15.261 *et

seq*., and noting that it "connotes a collective entity").[6]  The statutory context also makes

---

officers and employees of municipalities."  In light of the plain language of the statute and the parties' repeated concessions, the Court of Appeals' position is hardly remarkable.  See *Bisio*, unpub op at 5 ("The definition of 'public body' provided by MCL 15.232[(h)(*iii*)] does not include officers or employees acting on behalf of cities, townships, and villages. By contrast, MCL 15.232[(h)(*i*)], which provides the definition of 'public body' relevant to the executive branch of state government, does include officers and employees acting on behalf of the public body.  Had the Legislature so intended, it could have included officers or employees, or agents, in the definition of public body that pertains to cities, townships, and villages.  That it did not indicates the Legislature's intent to limit 'public body' in § 232[(h)(*iii*)] to the governing bodies of the entities listed.").

[6] See also *Herald Co*, 463 Mich at 130 n 10 ("*The American Heritage Dictionary of the English Language* (New College ed), p 147, defines 'body' as '[a] group of individuals regarded as an entity' and '[a] number of persons, concepts, or things regarded collectively; a group.'  *Webster's New Collegiate Dictionary* (7th ed), p 94, similarly defines the term as 'a group of persons or things' and 'a group of individuals organized for some purpose . . . (a legislative [body]).' ").  While "public body" is a defined term under the act, "body" is not.  Thus, it is appropriate to look to the dictionary for assistance in determining its meaning.  See *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011).  Since the definitions in both lay and legal dictionaries are the same, it is proper to rely on both types of dictionaries.  See *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 621 n 62; 886 NW2d 135 (2016).

it clear that, as it pertains to local governmental units, an individual does not qualify as an

other "body" under Subdivision (*iv*).[7]

---

[7] This is true whether the subdivisions of MCL 15.232(h) are read together or separately. First, reading them together, the word "other" as used in the MCL 15.232(h)(*iv*) statutory phrase "[a]ny other body" is used to refer to a "thing that is different or distinct from one already mentioned." Lexico, *Oxford English and Spanish Dictionary* <https://www.lexico.com/en/definition/other> (accessed July 14, 2020) [https://perma.cc/49ZU-DXEP]. Under this reading, any fair examination of the language of the statute must begin with the recognition that the Legislature included individuals like "officer[s]" and "employee[s]" in MCL 15.232(h)(*i*), which deals with the state government, but the Legislature did not include these terms in MCL 15.232(h)(*iii*), which concerns local governmental units. When the Legislature chooses to include a term in one place but not another in the same statute, courts should not read the term into the part where it was omitted. *Nickola v MIC Gen Ins Co*, 500 Mich 115, 125; 894 NW2d 552 (2017). Finding that local officers constitute public bodies under Subdivision (*iv*) would, in essence, undo the Legislature's exclusion of those officers from Subdivision (*iii*). Because "officer" was expressly listed in MCL 15.232(h)(*i*), it could not be added to MCL 15.232(h)(*iv*) by use of the catchall phrase "[a]ny other body" with regard to local governmental units.

There is also a good argument that MCL 15.232(h)(*i*) should *not* be read in conjunction with the other subdivisions of MCL 15.232(h). MCL 15.232(h)(*i*), which relates to the executive branch of the state government, is the only subdivision that includes individuals ("state officer[s]" and "[state] employee[s]") in the definition of "public body." But it has its own catchall phrase. MCL 15.232(h)(*i*) ("A state officer, employee, agency, department, division, bureau, board, commission, council, authority, *or other body in the executive branch of the state government . . . .*") (emphasis added). The next two subdivisions, MCL 15.232(h)(*ii*) and (h)(*iii*), relating to the legislative branch of state government and local governmental units, respectively, do not include any individuals. See, e.g., *Breighner*, 471 Mich at 232 (noting that "[Subdivision (*iii*)] designates several distinct governmental units as public bodies . . . ."). Thus, an argument may be made that the catchall phrase in the following subdivision, Subdivision (*iv*), only applies to the two subdivisions which immediately precede it, and which do not have their own catchall provisions. Applying the doctrine of *ejusdem generis*, then, would give us another reason to conclude that an individual working in the legislative branch of state government or in a local governmental unit cannot be deemed a "public body" under FOIA. See *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241(2000) (quotation marks and citation omitted) ("[Ejusdem generis] is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will

But, in a sleight of hand, the MPA's argument switches the focus from the city attorney himself being an "officer" to the city attorney occupying an "office." Relying on MCL 15.235(h)(*iv*), a provision it concedes "has received no attention in this case," the MPA contends that the contested documents must be turned over because "*the office* of the city attorney *is* a public body . . . ." In particular, the MPA asserts that "the office of the city attorney" fits within the catchall phrase "[a]ny other body that is created by . . . local authority." MCL 15.232(h)(*iv*). Thus, according to the MPA, "[a]ny entity created by local authority is a public body that must abide by FOIA's disclosure requirements."

This argument has some intuitive appeal, so far as it goes. But it sows the seeds of its own destruction. The MPA appears to recognize that a "body" must be an entity. Thus, its assertion that the act expressly contemplates that individuals can be "public bodies" is irrelevant since (1) the parties agree the city attorney is not himself a "public body" and (2) the question here is whether "the office of the city attorney" is a "public body" under MCL 15.232(h)(*iv*) because it is an *entity* created by local authority.

The majority opinion's contextual analysis does not add to the equation. The exemptions in Subdivisions (*i*) and (*iv*) at most show that since a "public body" includes other entities that one might think of as similar to a government office (such as an "agency, department, division [or] bureau" at the state level, MCL 15.232(h)(*i*), and a "department . . . or agency" at the local level, MCL 15.232(h)(*iii*)), the Legislature thought it necessary to expressly exclude certain offices from its catchall phrases (i.e., "the

---

ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated.") (alteration in original).

executive office of the governor or lieutenant governor," MCL 15.232(h)(*i*), and "the office of the county clerk . . . when acting in the capacity of clerk to the circuit court," MCL 15.232(h)(*iv*)). For this reason, I agree that "body" could reasonably be interpreted to include a government office that is, like the other governmental units on the list, a collective and distinct entity.

## B. APPLICATION

So if a department or other entity known as the "office of the city attorney" was created by local authority in the city, it might constitute a "public body." The question then becomes: was such an office ever created by the city? The MPA makes the conclusory assertion that Section 5.1(a) of defendant's charter creates the office of city attorney. See City of the Village of Clarkston Charter (City Charter), § 5.1(a). But that is a blatant misreading of the charter. As noted above, to qualify as a "body," an office must be a collective entity. Section 5.1(a) of the City Charter establishes the city attorney as one of the administrative officers of the city. It also gives the city council the power to establish additional administrative officers or departments or to combine them and prescribe their duties. The city attorney in this case is a private attorney who contracts with the city to serve as its city attorney. No one contends that either the City Charter or the city council created a law department or corporation counsel's office headed by the city attorney.

The majority attempts to supplement the MPA's argument with additional citations to the charter. Thus, the majority notes that, not surprisingly, another provision of the charter sets forth the duties of the city attorney. See City Charter, § 5.6. But nothing in that provision creates an entity within the city (such as a department) to be run by the city

9

attorney. But alas, the majority finally identifies two provisions that use the word "office" in relation to the administrative officers of the city. The first, relating to appointments of administrative officers, says that "the appointing authority shall consider only the qualifications of the appointee and that person's ability to discharge the duties of the *office* to which he/she is appointed." City Charter, § 5.1(d) (emphasis added). The second, related to vacancies, provides that "[i]n the event of a vacancy in *an administrative office* the Council shall appoint a replacement within one hundred twenty (120) days or may appoint an acting officer during the period of a vacancy in the *office*." City Charter, § 5.1(h) (emphasis added).

The majority spikes the football a little too soon and, in the process, has massively expanded the scope of FOIA. It is true in a sense that, as the majority asserts, "an 'officer' generally occupies an 'office.'" But as used in the City Charter, an "office" is simply a position of public authority occupied by an officer. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "office" in pertinent part as "a special duty, charge, or position conferred by an exercise of governmental authority and for a public purpose[;] a position of authority to exercise a public function and to receive whatever emoluments may belong to it."). Such a position cannot qualify as a "body" because it is not a collective entity. To the extent the charter describes an office, it is filled by a solitary officer—the city attorney; it is an office only in the sense that the position is occupied by an officer. It is unlike, say, the Executive Office of the Governor, which includes various divisions and other offices within it, all staffed with employees in addition to any "officer." See, for example, *House Speaker v Governor*, 443 Mich 560, 589 n 35; 506 NW2d 190 (1993); see also MCL 10.151 ("The Office of Regulatory Reform is created within the Executive

10

Office of the Governor.").[8]  The City Charter gives the city attorney no such trappings. Thus, it simply cannot be disputed that while the charter established the position of city attorney as an administrative officer of the city having certain public duties, it did not create a collective entity or department to assist him in performing them.

Under the majority's reasoning, any legal authority creating an officer position *ipso facto* creates an office subject to FOIA.  Of course, this flies in the face of the parties' concession and the Court of Appeals' holding that the city attorney is not himself a public body.  And it flies in the face of our interpretive principles.  Why, one might ask, would the Legislature include officers and employees in the definition of "public body" pertaining to state governmental entities but not in the definition pertaining to local governmental entities if it intended them to be included in both?  Ordinarily, we would give meaning to this legislative choice.  Finally, and perhaps most importantly, the majority's reasoning distorts the meaning of the key terms, "body" and "office"—the majority never explains why the type of office created by the City Charter should be considered a collective entity such that it would qualify as an "other body" under FOIA.

The majority's holding today portends a radical expansion of the definition of "public body" under FOIA such that it will now encompass all local officers (not just city

---

[8] See also MCL 50.67(1) ("The county clerk shall keep his or her office at the seat of justice for the county[.]").  I could not locate a definition describing an "office" as a collective and distinct entity.  The closest definition I found is "a place where a particular kind of business is transacted or a service is supplied . . . [such as] a place in which the functions of a public officer are performed."  *Merriam-Webster's Collegiate Dictionary* (11th ed).  This description would seemingly apply to the Executive Office of the Governor and the office of the county clerk.

11

attorneys).[9]  As the majority makes clear by citing *People v Freedland*, 308 Mich 449; 14

NW2d 62 (1944), all public officers occupy offices created by some legal authority.  See

*id*. at 457-458 (noting as one of the "indispensable" elements of a "public office of a civil

nature" that "[i]t must be created by the Constitution or by the legislature or created by a

municipality or other body through authority conferred by the legislature") (quotation

marks and citation omitted).  It is virtually unheard of for a court to adopt an amicus's

interpretation having such a widespread impact without allowing an opportunity for input

from the parties or the many thousands of local officers who will be directly affected by

our decision.[10]  The majority's mangling of the meaning of "body" and "office" will, I am

afraid, have many serious consequences beyond this case.

---

[9] The new categories of local officers subject to FOIA as public bodies would appear to include, at a minimum, county officials (such as county executives, prosecutors, clerks, treasurers, and county commission members); local government officials (such as mayors, city council members, supervisors, trustees, clerks, treasurers, city attorneys, city assessors, city managers, and police and fire chiefs); and thousands of police officers, deputy sheriffs, assistant prosecutors, and assistant attorneys general.  See *People v Coutu*, 459 Mich 348, 357-358; 589 NW2d 458 (1999) (holding that deputy sheriffs are public officials for purposes of the common-law offense of misconduct in office); *Tzatzken v Detroit*, 226 Mich 603, 608; 198 NW 214 (1924) (holding that police officers are public officers for purposes of tort immunity).  It will also likely include *any* person who is elected or appointed to "[a] department, board, agency, institution, commission, authority, division, council, college, university, school district, intermediate school district, special district, or other public entity of this state or a city, village, township, or county in this state."  MCL 15.181(e)(*iii*) (defining "public officer" for purposes of the Incompatible Public Offices Act, MCL 15.181 *et seq*.).  Chief Justice MCCORMACK would expand the reach of FOIA even further to encompass records maintained by agents of public bodies, including private individuals and companies who contract to provide goods or services to one of the listed governmental units.

[10] There are many groups who I am sure would like to provide input on this issue, including the Michigan Municipal League and the Michigan Townships Association, who filed a joint amicus brief in this case in our Court but have not had an opportunity to address this

## III. CONCLUSION

It is impossible to take the theory the Court has now landed on seriously, given that it was not raised by the parties or addressed by the lower courts and is incompatible with the plain language of the statute.  It depends on a conclusion that a fictional entity known as "the office of the city attorney" was created by the City Charter, even though it clearly was not.  And I believe the majority's detour will have serious consequences far beyond this case.  Even if it seems to some like good public policy for FOIA to encompass individual actors at the local level like private attorneys who contract to serve as city attorneys, I would leave it to the Legislature to include such "local officers" in the statute by amending it.

We do much better when we let the parties and the lower courts sharpen the issues for us to decide.  We should do that here.  I would affirm the Court of Appeals decision because it reached the right result for the right reasons on the issue presented.  I respectfully dissent.

David F. Viviano

---

point since the MPA's amicus brief was filed on the same day.  But other groups representing local officers may also appreciate the opportunity to be heard, such as the Fraternal Order of Police, the Police Officers Association of Michigan, the Prosecuting Attorneys Association of Michigan, and the Michigan Association of Counties.