*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PROGRESS MICHIGAN,

        Plaintiff-Appellant,

UNPUBLISHED
June 9, 2022

v

MONICA PALMER and WILLIAM HARTMANN[1],

        Defendants-Appellees.

No. 357610
Wayne Circuit Court
LC No. 21-000899-CZ

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

In this action to compel disclosure of public records under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants. Plaintiff contends on appeal that the trial court erred in concluding that the requested communications were not public records subject to FOIA. We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case involves a FOIA request to the Wayne County Board of Canvassers (the Board) regarding alleged communications between defendants and the public during the certification process of the 2020 presidential election results, which was initially submitted to Wayne County and subsequently forwarded to the individual board members.[2] At the time, defendants were

---

[1] After this appeal was filed, Defendant William Hartmann died. Therefore, MCR 2.202(A) will apply on remand.

[2] The complaint did not identify Wayne County as a party to the case. Rather, defendants were identified as parties in their "official capacity" as members of the Board. However, defendants argued that Wayne County was the relevant "public body" because the Board was "a component part of the County." However, as explained below, the Board is a "public body" within the meaning of FOIA.

members of the Board, which oversees the county's certification of federal, state, and local elections. See MCL 168.24a through MCL 168.24b.

On November 17, 2020, the Board met to review and certify the canvass of votes from the November 2020 election. In the initial vote to certify the canvass, defendants voted against certification. However, after hours of public comment, the Board ultimately certified the canvass in a subsequent vote.

On November 23, 2020, plaintiff filed a FOIA request with Wayne County, seeking the following:

> All communications since November 1, 2020 between members of the Wayne County Board of Canvassers and anyone associated with the Michigan Republican Party and its local parties, the Republican National Committee, or Trump for President, including but not limited to elected officials, party officials, staff, attorneys, and consultants. This request includes any attachments that were part of these communications, such as word documents, spreadsheets, PDFs, or other types of documents. "Communications" include but are not limited to emails, text messages, direct messages, phone messages, and any form of communication whether made using a government-provided device, service, or account, or a personal device, service, or account.

Plaintiff received an initial response to this request from the Wayne County Department of Technology (WCDOT). This response stated that, because "none of the members of the Wayne County Board of Canvassers have been provided with a Wayne County email account or a Wayne County cell phone," no records existed within the WCDOT that were responsive to plaintiff's request. This response also provided that plaintiff's FOIA request was forwarded to the individual members of the Board, including defendants, in the event that they possessed public records responsive to plaintiff's request. Plaintiff received a second response to its request specific to records sought from the individual board members, which stated, in pertinent part:

> Your request was forwarded to the four members of the Wayne County Board of canvassers. They were asked to review the request and forward any responsive public records to our office. Your request must be denied, because, despite our request to the Wayne County Board of Canvassers, we have not received any responsive records.

Plaintiff then filed a complaint in the Wayne Circuit Court, alleging that defendants, as members of the Board, had committed FOIA violations by refusing to disclose public records that were created using their personal devices, services, and accounts. Specifically, plaintiff argued that defendants had used personal devices, services, and accounts to communicate about official business pursuant to their roles as members of the Board, thus subjecting these communications to disclosure under FOIA. Plaintiff requested that the trial court order defendants to disclose the public records under FOIA. Plaintiff later amended its complaint.

In lieu of an answer, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). In their brief supporting the motion, defendants first argued that

plaintiff's complaint was legally deficient. In particular, defendants asserted that plaintiff failed to provide *specific* factual allegations that, if true, would give rise to FOIA violations; defendants argued that plaintiff's allegations were instead based on mere information and belief. And defendants argued further that, even assuming plaintiff's bare allegations were true, they could not establish that any of the requested records actually existed and, accordingly, that any FOIA violations occurred.

Defendants also argued that, because they were named as parties in their official capacity as members of the Board, plaintiff's claim legally rested with Wayne County, which is the appropriate public body in charge of responding to FOIA requests. And defendants stressed that the county had no ownership or control over their personal records. Relatedly, defendants argued that neither they themselves nor their records were subject to FOIA because they were not public bodies as defined by the statute. Lastly, defendants argued that the records being sought were not public records subject to disclosure under FOIA, but rather, were limited to private communications. Defendants stated that it was not enough for defendants' private communications to merely discuss Board business and that, for FOIA to apply, the communications would have needed to be admitted in the record of a public meeting.

In a brief opposing defendants' motion for summary disposition, plaintiff asserted that each of defendants' alleged grounds for summary disposition were meritless. Plaintiff first argued that, as public officers holding positions created by state law, defendants were public bodies subject to FOIA's disclosure requirements. Plaintiff also highlighted specific evidence to support its claim that defendants used personal devices, services, and accounts in conducting official business of the Board, including defendants' personal e-mail addresses being advertised on the Board's website and numerous news articles indicating that defendants discussed board business on social media and had communications with President Trump concerning board business around the time the Board was certifying the county's 2020 election results.

Specific to the communications being sought, both defendants had allegedly spoken with then President Trump after the Board's vote to certify the 2020 election results and before signing affidavits to rescind their votes for certification. These conversations reportedly involved President Trump thanking defendants for their support, with him also discussing with one defendant threats apparently made against her following the Board's meeting. Finally, plaintiff asserted that its amended complaint was sufficiently well-pleaded to provide notice of its claim, especially considering that defendants' private e-mail addresses were published on the Board's website and defendants' openness about conducting Board business via personal devices and accounts.

A hearing on defendants' motion for summary disposition took place, with the parties largely making the same arguments as presented in their briefs. Plaintiff did elaborate, however, that, even though the records sought were technically from private means of communication, they should still be considered public records under FOIA because they involved discussions of government business. Defendants, though conceding that one of them did receive a text message from a Republican official which set up a brief phone call with President Trump, countered that these communications occurred outside of—and did not concern—official Board functions.

The trial court ultimately granted defendants' motion for summary disposition. Relying on *Hopkins v Duncan Twp*, 294 Mich App 401; 812 NW2d 27 (2011), it reasoned that plaintiff had failed to produce evidence that its requested information was ever in the Board's possession, referenced in any board meeting minutes, or otherwise used in the performance of an official function.[3] This appeal followed. After the appeal was filed, Hartmann died.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

> Legal determinations made in the context of a FOIA proceeding are [also] reviewed de novo. This Court also reviews de novo questions of statutory interpretation. The Court's primary goal of statutory interpretation is to give effect to the Legislature's intent. If the statute's language is clear and unambiguous, this Court must give the words their plain and ordinary meaning, and judicial construction of the statute is not permitted. [*Blackwell v Livonia*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 357469); slip op at 3 (citations omitted).]

The most reliable evidence of legislative intent is the plain language of the statute. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). Additionally, the trial court's factual findings underlying its application of the FOIA are reviewed for clear error. *Mich Open Carry, Inc v Dep't of State Police*, 330 Mich App 614, 621; 950 NW2d 484 (2019). "A finding is clearly erroneous if, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake was made." *Id*.

## III. ANALYSIS

"The purpose of FOIA is to provide to the people of Michigan 'full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees,' thereby allowing them to 'fully participate in the democratic process.' " *Amberg v Dearborn*, 497 Mich 28, 30; 859 NW2d 674 (2014), quoting MCL 15.231(2).

> The Legislature codified the FOIA to facilitate disclosure to the public of public records held by public bodies. To that end, the FOIA must be broadly interpreted to allow public access to the records held by public bodies. Relatedly, the statutory exemptions must be narrowly construed to serve the policy of open

---

[3] At oral argument in the instant matter, defendants' counsel conceded that in fact they had received records from one of the canvassers, but they did not share the information with plaintiff counsel, create a privilege log, seek a protective order or *in camera* review of same, nor did they correct that factual error made by the trial court.

access to public records. [*Mich Open Carry, Inc*, 330 Mich App at 625 (quotation marks and citations omitted).]

"As a result, except under certain specifically delineated exceptions, see MCL 15.243, a person who 'provid[es] a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record' is entitled 'to inspect, copy, or receive copies of the requested public record of the public body.' " *Amberg*, 497 Mich at 30, quoting MCL 15.233(1) (alteration in original).

"Under FOIA, a public body must disclose all public records that are not specifically exempt under the act." *Hopkins v Duncan Twp*, 294 Mich App 401, 409; 812 NW2d 27 (2011). FOIA defines "public record" as "a writing prepared, owned, used, in the possession of, or retained by a public body *in the performance of an official function*, from the time it is created." MCL 15.232(i) (emphasis added). "A writing can become a public record after its creation if possessed by a public body in the performance of an official function, or if used by a public body, regardless of who prepared it." *Hopkins*, 294 Mich App at 409. MCL 15.235(5)(b) requires the public body to certify that the record does not exist when non-existence of the record is "the reason for denying the request or a portion of the request." See *Detroit Free Press, Inc v Southfield*, 269 Mich App 275, 281; 713 NW2d 28 (2005). "In court, the burden is on the public body to justify its denial." *Id.*

In this case, the FOIA request sought: (1) "[a]ll communications since November 1, 2020," (2) that were "between members of the Wayne County Board of Canvassers and anyone associated with the Michigan Republican Party and its local parties, the Republican National Committee, or Trump for President, including but not limited to elected officials, party officials, staff, attorneys, and consultants." "Communications" included "emails, text messages, direct messages, phone messages, and any form of communication whether made using a government-provided device, service, or account, or a personal device, service, or account."

In response to this request, Wayne County indicated that it had "not received any responsive records." Plaintiff then filed the instant suit, alleging that "Palmer and Hartmann's refusal to disclose public records created using personal devices, services, and/or accounts violates FOIA." In response, defendants moved for summary disposition, arguing in relevant part that the allegations in the amended complaint amounted to speculation that defendants had created writings that were subject to disclosure under FOIA. For the reasons already discussed, the trial court granted summary disposition in favor of defendants, which then led to the instant appeal.

At oral argument before this Court, defendants disclosed that one of the defendants had turned over "documents" in response to the FOIA request, which were deemed by Wayne County to be unresponsive to the request. Counsel for plaintiff asserted that plaintiff was informed that "there were no responsive records." Thus, plaintiff was informed for the first time at oral argument that certain documents were provided to Wayne County in relation to the FOIA request. Plaintiff requested that the matter be remanded to the trial court so that the documents could be reviewed.

A "court, on its own motion, may view the public record in controversy in private before reaching a decision." MCL 15.240(4). As already stated, " '[p]ublic record' means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an

official function, from the time it is created." MCL 15.232(i). "Public record[s]" include records that are "exempt from disclosure," and records "that are subject to disclosure. . . ." MCL 15.232(i)(*i*)-(*ii*).

In this case, there is no dispute that Wayne County is a public body and that it possessed the "documents" at one point. Importantly, however, the FOIA request was directed at the Board, which is also a public body under FOIA. The legislature created the boards of county canvassers under MCL 168.24a. Therefore, regardless if the Board is under the control of Wayne County, MCL 5.232(h)(*iii*), or a body created by state authority, MCL 15.232(h)(*iv*), the Board itself is a "public body" within the meaning of FOIA. See MCL 15.232(h)(*iii*) and (*iv*).[4] Nonetheless, because defendants failed to disclose that certain documents existed until oral argument, it is unclear whether the documents fall under Plaintiff's FOIA request and relate to "the performance of an official function . . . ." We conclude that this issue needs to be considered by the trial court on remand.

We also conclude that the fact that defendants may have used personal devices, services, and accounts in conducting official business of the Board is inconsequential to the issue of whether the writings are subject to FOIA. In *Hopkins*, this Court evaluated whether private notes of an elected official during a public meeting were public records within the meaning of FOIA. *Hopkins*, 294 Mich App at 414. In making its determination, the *Hopkins* Court discussed this Court's previous decision *Walloon Lake Water Sys, Inc v Melrose Twp*, 163 Mich App 726; 415 NW2d 292 (1987). *Hopkins*, 294 Mich App at 410-411. "In *Walloon Lake*, the plaintiff sought disclosure of a personal letter that had been read into the record at a township meeting." *Id*. "This Court concluded that because the letter was read into the record at a public meeting and its contents were considered by the township board, it became a public record subject to disclosure under FOIA." *Id*. In *Hopkins*, we recognized that in deciding that the letter had been "used" for purposes of the FOIA, the *Walloon* Court explained:

> To be fully aware of the affairs of government, interested citizens are entitled to know not only the basis for various decisions to act, but also for decisions not to act. To further this purpose, we must construe the FOIA in such a manner as to require disclosure of records of public bodies used or possessed in their decisions to act, as well as of similar records pertaining to decisions of the body not to act. Under this holding, not every communication received by a public body will be subject to disclosure. But where, as here, the

---

[4] We note that MCL 15.236(1) requires a public body under the control of a county to designate a FOIA coordinator. However, "[f]or all other public bodies, the chief administrative officer of the respective public body is designated the public body's FOIA coordinator," unless another individual is otherwise designated. See MCL 15.236(2) and (3). Although defendants asserted that Wayne County was the entity responsible for responding to FOIA requests directed to the Board, based on the record, it is unclear whether the WCDOT was the Board's FOIA coordinator. Nonetheless, it is undisputed that WCDOT forwarded plaintiff's FOIA request to the individual board members and that the Board received the request.

content of a document is made part of the minutes of the body's meeting where it conducts its official affairs and the content of the document served as the basis for a decision to refrain from taking official affirmative action, that document must be considered a "public record," as defined by the FOIA. [*Hopkins*, 294 Mich App at 411, quoting *Walloon Lake Water Sys*, Inc, 163 Mich App at 730-731.]

The *Hopkins* Court determined that the handwritten notes "were never in the township's possession, nor were they used in the performance of an official function." *Hopkins*, 294 Mich App at 416. This Court emphasized that the notes "were not for substantive decision-making or recordkeeping," *id.*, and concluded that "individual notes taken by a decision-maker on a governmental issue are *only* a public record when the notes are *taken in furtherance of an official function*," *id*. at 417 (emphasis added).

The instant case is distinguishable from *Hopkins*. This case does not concern private notes kept by the individual board members. Rather, it concerns potential communications between board members and others regarding the Board's official function of certifying the election. This case is further distinguishable in light of the fact that the county did not provide board members with official communication accounts and the Board website listed the personal e-mail addresses of defendants. As recognized in *Hopkins*, 294 Mich App at 411, quoting *Walloon Lake*, 163 Mich App at 730, "we must construe the FOIA in such a manner as to require disclosure of records of public bodies used or possessed in their decisions to act, as well as of similar records pertaining to decisions of the body not to act." Although the personal communications were not read into the Board's official meeting minutes, we are persuaded that if the contents of those communications "served as the basis for a decision to refrain from taking official affirmative action," those communications must be considered a "public record," as defined by the FOIA. *Hopkins*, 294 Mich App at 411, quoting *Walloon Lake*, 163 Mich App at 731. Furthermore, Wayne County asserted that it did in fact receive some records from at least one of the defendants, but that it determined that such records were not responsive to the FOIA request. However, no exemptions were asserted and no judicial review was held to determine whether or not these records were subject to FOIA. See *Evening News Ass'n v Troy*, 417 Mich 481, 515-516; 339 NW2d 421 (1983) (holding that in determining whether information is exempt for disclosure under FOIA, the court should: (1) receive a complete particularized justification for the exemption; (2) conduct a hearing *in camera* to determine whether justification exists; or (3) consider allowing the plaintiff's counsel access to the information *in camera* under a special agreement whenever possible.).

It would be contrary to the purposes of FOIA for this Court to conclude that communications of individual board members concerning the Board's official function of certifying the canvass of votes for elections are not subject to FOIA simply because the county did not provide the individual board members with county e-mail accounts or separate communication devices. Our conclusion is bolstered by the fact that the Board's official website advertised the personal e-mail accounts of board members, suggesting that the board members may have used their own personal e-mail accounts to communicate as members of the Board and with the public concerning the official functions of the Board.

Plaintiff also claims that *Blackwell*, which is cited on appeal by defendants, is distinguishable from the instant case. Specifically, plaintiff stresses that the records requested in *Blackwell* involved the mayor's political campaign, not city business, while in the instant case defendants are believed to have used personal devices, services, and accounts to conduct board business. We agree that *Blackwell* is distinguishable from the instant case.

The *Blackwell* Court, in holding that certain requested records were not public records subject to FOIA, stated that "unofficial private writings belonging solely to an individual should not be subject to public disclosure merely because that individual is a state employee[, and] . . . the same is true for all public body employees." *Blackwell*, ___ Mich App at ___; slip op at 7 (citation omitted; alterations in original). The Court then reasoned that

> private direct messages sent or received by [the defendant] through an unofficial Facebook profile are not subject to public disclosure merely because [the defendant] is an administrative officer for the city of Livonia. Instead, such direct messages would be subject to disclosure under FOIA only if such messages were utilized by the city of Livonia mayor's office in the performance of an official function. See MCL 15.232(i).
>
> Contrary to [the] plaintiff's assertions, none of the evidence submitted by him demonstrated that [the defendant] used the Facebook profile to communicate with individual constituents regarding official business. On the contrary, [the defendant's] comment instructing a constituent to call her office directly showed that [the defendant] did not use the Facebook profile to communicate with individual constituents regarding official business. Instead, she directed the constituent to communicate with her office through official channels by calling her office directly. Indeed, [a witness] attested in his affidavit that [the defendant's] Facebook profile had never been available for official use by the city of Livonia mayor's office. [*Id*. at ___; slip op at 7.]

The Court concluded, therefore, that withholding of the requested records was proper because "the record evidence indicates that the direct messages were not owned, used, in the possession of, or retained by the city of Livonia mayor's office in the performance of an official function." *Id*. Unlike in *Blackwell*, the trial court has not reviewed the documents submitted by one of the defendants. Additionally, plaintiff has submitted evidence that defendants' personal devices, services, and accounts were used to communicate about board business. Specifically, defendants' personal e-mail addresses were advertised on the Board's website.

Additionally, public records are not insulated from FOIA by their location or the fact that a private entity created them originally for its own use.[5] See, e.g., *Amberg*, 497 Mich at 32-33

---

[5] Below, defendants also argued that the FOIA request was overly broad because plaintiff's FOIA request "did not differentiate between public records and private records." However, as already stated, FOIA requests concern only public records. While it would have been prudent for the county to provide the board members with separate accounts to conduct and communicate about Board business, that is not what occurred in this case.

(concluding that copies of video surveillance recordings created by third parties and received by the defendants in a pending misdemeanor criminal matter were public records under FOIA despite the fact that the defendants did not receive the recordings until after an issuance of a criminal misdemeanor citation because, "even if the recordings did not factor into [the] defendants' decision to *issue* a citation, they were nevertheless collected as evidence by defendants *to support that decision*."). To reiterate, FOIA "does not require that the record be created by the public body, or even created at its behest. Rather, it is ownership, use, possession, or retention in the performance of an official function that is determinative." *Detroit News, Inc v Detroit*, 204 Mich App 720, 724; 516 NW2d 151 (1994). In other words, if the board members communicated about the Board's official function before or after they voted to certify the 2020 election and the board members considered the communications to support their decision to initially deny certification of the 2020 election, subsequently certify the election, or attempt to withdraw the certification, those communications are public records within the meaning of FOIA. See *id.*; *Amberg*, 497 Mich at 32-33.

In sum, we vacate the order granting summary disposition and remand the matter to the trial court so that it can determine whether the Board, as the relevant public body, complied with its obligation to certify that the records did not exist as the basis for the denial under MCL 15.235(5)(b),[6] and whether it is appropriate to review the documents received by Wayne County in response to plaintiff's FOIA request *in camera*. Additionally, the trial court should consider whether discovery is warranted. In the event that the trial court finds that it is appropriate to review the documents, the trial court shall determine whether the documents fall under the FOIA request. If an exemption is asserted, the trial court shall comply with the procedure outlined in *Evening News Ass'n*, 417 Mich at 515-516.

We decline to consider the issue of whether defendants fall under the definition of "public body" at this time. Indeed, that issue could become moot in the event that the trial court determines that the documents do not fit within the FOIA request. The issue could also become moot with respect to Hartmann in the event that he is dismissed as a defendant under MCR 2.202(A).

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

[6] As indicated above, it is unclear whether the WCDOT was the Board's FOIA coordinator responsible for responding to FOIA requests directed to the Board. See note 5 of this opinion.